UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL CARROLL and<br>MICHAEL PAPPAGALLO,<br><br>Defendants. | No. 19-cr-545 (CM) |

**MEMORANDUM OF LAW IN SUPPORT OF MICHAEL CARROLL'S
<u>MOTION TO COMPEL DISCOVERY</u>**

- i -

**TABLE OF CONTENTS**

Introduction ..............................................................................................................................1

Background ..............................................................................................................................2

Argument .................................................................................................................................5

Conclusion ...............................................................................................................................8

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*United States v. Baslan*,
    No. 13 Cr. 220 (RJD), 2014 WL 3490682 (E.D.N.Y. July 11, 2014) ........................................7

*United States v. Ginsberg*,
    758 F.2d 823 (2d Cir. 1985)......................................................................................................7

*United States v. Mamone*,
    543 F.2d 457 (2d Cir. 1976)...................................................................................................5, 7

*United States v. Mosca*,
    475 F.2d 1052 (2d Cir. 1973)....................................................................................................5

*United States v. Rittweger*,
    524 F.3d 171 (2d Cir. 2008)......................................................................................................8

*United States v. Rosner*,
    485 F.2d 1213 (2d Cir. 1973)................................................................................................5, 6

*United States v. Stein*,
    541 F.3d 130 (2d Cir. 2008)......................................................................................................7

*Weatherford v. Bursey*,
    429 U.S. 545 (1977)...............................................................................................................2, 7

*Westchester Putnam Ctys.. Heavy & Highway Laborers Local 60 Benefit Funds v.
    Brixmor Prop. Grp., et al.*,
    16 Civ. 02400 (S.D.N.Y. Mar. 31, 2016).................................................................................3

Defendant Michael Carroll respectfully submits this memorandum of law in support of his motion to compel the government to produce notes and summaries related to interviews with Steven Splain. As we explain below, the government appears to have obtained confidential defense communications from Mr. Splain, and the production of the government's notes of its interviews of Mr. Splain is necessary to determine the extent of the intrusion and the appropriate remedies.

## INTRODUCTION

Steven Splain is a cooperating witness in this case. The government met with him as early as December 2018. At that time, Mr. Splain was party to a common interest agreement with Mr. Carroll. The government has special obligations where, as here, it is dealing with a witness who is simultaneously pursuing a cooperation agreement with the government and engaging in confidential communications protected by a common interest agreement. Among other things, the government must ensure it does not elicit from Mr. Splain information about privileged communications or Mr. Carroll's defense strategy. And it must instruct Mr. Splain not to seek such information in the course of his ongoing interactions with Mr. Carroll. Appropriate care was particularly necessary here, since the government surely knew that Mr. Splain was actively working for Mr. Carroll's company—and therefore was in regular contact with Mr. Carroll—during the period in which the government was recruiting Mr. Splain as a cooperating witness. There are serious reasons to doubt that the government took the required steps here.

The government's limited discovery disclosures reveal that in February 2019, it was advised by Mr. Splain's counsel of two conversations Mr. Splain alleged that he had with Mr. Carroll that month, in which Mr. Carroll purportedly asked Mr. Splain about the status of the

government's investigation.  Such conversations would plainly be within the scope of their common interest agreement.

That Mr. Splain, through counsel, felt free to describe these alleged conversations to the government three months *after* the government began recruiting and debriefing him as a cooperator raises serious questions over whether the government properly instructed Mr. Splain at the outset and whether the government's case has been impermissibly tainted by the use of privileged material.  *See Weatherford v. Bursey*, 429 U.S. 545, 554 (1977) (likely Sixth Amendment violation if "prosecution learned [from an informant] . . . the details of . . . conversations about trial preparations").

The government has refused Mr. Carroll's requests for materials shedding light on these serious threshold questions.  In order to evaluate the extent of any Sixth Amendment violation and any appropriate remedy, Mr. Carroll respectfully requests that the Court direct the government to produce all Form FD-302s (or other notes) related to interviews with Mr. Splain.  These documents are necessary to learn whether Mr. Splain was appropriately instructed, whether he shared any other information that would further taint the government's investigation, and whether remedial action, including suppression of evidence or dismissal of the charges, is warranted.

## BACKGROUND

The government has charged Mr. Carroll with conspiring with Mr. Splain and two others to "smooth" Brixmor Property Group Inc.'s ("Brixmor") same-store net operating income ("SS-NOI").[1]  In March 2016, Mr. Carroll and Mr. Splain, along with Brixmor and Michael Pappagallo, were named as co-defendants in a civil securities class action regarding those same

---

[1] The facts of this case are set forth in detail in Mr. Carroll's Motion to Dismiss the Indictment, filed today.

alleged adjustments to Brixmor's SS-NOI.  *See* Class Action Compl., *Westchester Putnam Ctys. Heavy & Highway Laborers Local 60 Benefit Fund v. Brixmor Prop. Grp., et al.*, 16 Civ. 2400 (AT) (S.D.N.Y. Mar. 31, 2016).  In connection with the class action lawsuit and related matters, which at that time included an investigation by the Securities and Exchange Commission and later an investigation by the government, the defendants, including Mr. Carroll and Mr. Splain, entered into a common interest agreement no later than May 2016.  Declaration of Michelle Nicole Diamond in Support of Michael Carroll's Motion to Compel Discovery ("Diamond Decl.") ¶ 3.  It was not until March 4, 2019, that Mr. Splain's counsel informed Mr. Carroll's counsel that Mr. Splain was withdrawing from the common interest agreement.  *Id.* ¶ 4.  At that time, Mr. Splain also resigned from his position working for Mr. Carroll's company, ShopOne Centers REIT, Inc.

The government has recently disclosed that it began interviewing Mr. Splain as early as December 10, 2018, approximately three months before Mr. Splain exited the common interest agreement and stopped working for ShopOne.  *See id.*, Ex. A (S.D.N.Y. Letter to Carroll, dated Nov. 4, 2019) at 3-4.  In a letter dated September 27, 2019, the government stated that it had learned that "in or about February 2019, [Mr.] Carroll contacted Steven Splain on approximately two occasions and asked . . . whether Splain had any information about the Government's investigation."  *Id.*, Ex. B (S.D.N.Y. Letter to Carroll, dated Sept. 27, 2019) at 2.  The government later clarified that "on or about February 21, 2019, counsel for Splain informed the Government that Carroll had contacted Splain twice earlier in the month."  *Id.*, Ex. C (S.D.N.Y. Letter to Carroll, dated Dec. 6, 2019) at 3.  In other words, the alleged conversations between Mr. Carroll and Mr. Splain took place before Mr. Splain withdrew from the common interest agreement in March 2019.  And the subject matter of the alleged conversations—the status of the

3

government's investigation—would fall squarely within the scope of the common interest agreement.

After discovering that the government had obtained common interest communications from Mr. Splain, Mr. Carroll promptly contacted the government to assess the scope of any Sixth Amendment violation and to determine whether remedial action was necessary. In a letter dated November 22, 2019, Mr. Carroll explained the issue and requested that the government produce all Form FD-302s related to interviews with Mr. Splain. *See id.*, Ex. D (Carroll Letter to S.D.N.Y., dated Nov. 22, 2019) at 3-4.

On December 6, 2019, the government rejected Mr. Carroll's request. With respect to the two alleged February 2019 conversations, the government asserted that it was Mr. Carroll who twice initiated a conversation with Mr. Splain about the government's investigation, and claimed that during these conversations, "Splain deliberately said little to advance the conversation" and "Splain did nothing to prompt them to linger on the subject [of the government's investigation]." Ex. C at 3. The government did not produce an affidavit to this effect from Mr. Splain. Nor did it provide any record of its communications with Mr. Splain.

Instead, the government provided a quarter-page of handwritten notes of a call the government had with Mr. Splain's counsel. *See* Ex. C at Appendix C (S.D.N.Y. Handwritten Notes, dated Feb. 21, 2019). The notes do not support the government's account. *First*, the notes do not reflect that Mr. Carroll was the one who had "contacted Splain twice," as the government represented. Ex. C at 3. Rather, the notes reflect Mr. Splain's counsel stating that Mr. Splain had received a call from Mr. Carroll on one occasion, during the week of February 4. The notes also reflect that the two spoke again the week of February 11, but they do not indicate who initiated the second call. *Second*, the notes contain no representations about whether Mr.

4

Splain "said little to advance the conversation" or "did nothing to prompt them to linger on the subject," leaving the basis for the government's representations on these points unexplained. *Id.* Rather, the notes reflect Mr. Splain offering the opinion that "maybe USAO was busy," which very likely invited further discussion about the criminal investigation. Nor do the notes provide any insight on whether the government properly cautioned Mr. Splain about not probing into defense strategy or revealing his confidential communications with Mr. Carroll pursuant to the common interest agreement. Nonetheless, the government took the position that these notes, which are ambiguous at best, somehow definitively resolve the issue. They do not. Mr. Carroll now moves to compel the production of the Form FD-302s (or other notes).

## ARGUMENT

The disclosure of all Form FD-302s (or other notes) relating to interviews with Mr. Splain is necessary to evaluate whether the government's case has been tainted by the use of privileged material. It is well-established that an "invasion by a government agent into the legal camp of the defense may violate the protection of the Sixth Amendment . . . ." *United States v. Mosca*, 475 F.2d 1052, 1060 (2d Cir. 1973); *see also United States v. Mamone*, 543 F.2d 457, 460 (2d Cir. 1976) (collecting cases); *United States v. Rosner*, 485 F.2d 1213, 1224 (2d Cir. 1973) ("[T]he essence of the Sixth Amendment right is, indeed, privacy of communication with counsel."). To avoid violating Mr. Carroll's constitutional rights, the government was obligated to ensure that it did not elicit from Mr. Splain information about privileged communications or defense strategy even as it recruited him as a cooperating witness. The government was further required to instruct Mr. Splain not to attempt to learn such information in the course of his ongoing interactions with Mr. Carroll. *See Rosner*, 485 F.2d at 1225 (noting that after a witness agreed to cooperate, "the Government should have told [him] not to go near the legal

5

conferences of the defense," and noting favorably that the witness "had been warned at the outset not to divulge anything to the prosecutors concerning the defense").

Even from the limited information the government has provided, it appears that the government did not satisfy its obligations in this case. Here, the government interviewed Mr. Splain at least four times during the period that Mr. Splain was still a party to the common interest agreement. *See* Ex. A at 3-4 (identifying four interviews with Mr. Splain in December 2018 and January 2019). The government acknowledges that Mr. Splain, through his counsel, informed it of two alleged conversations between Mr. Splain and Mr. Carroll regarding the status of the government's investigation. *See* Ex. C at 3. The alleged conversations took place in February 2019, one month before Mr. Splain withdrew from the common interest agreement. *See id.* Any conversation at that time between Mr. Splain and Mr. Carroll regarding the government's investigation or defense strategy would be protected by their common interest agreement.

The government's recent *Brady* disclosure suggests that these are not the only confidential defense communications the government improperly obtained from Mr. Splain. According to the disclosure, on January 14, 2019—while Mr. Splain was still a party to the common interest agreement—Mr. Splain told investigators that "following the whistleblower allegations," Mr. Carroll told Mr. Splain that Mr. Pappagallo (Brixmor's President and CFO) was at "fault" because he had "spread[] a culture of jokes and looseness." Ex. A at 4. The government's *Brady* disclosure does not clarify *when* Mr. Carroll allegedly made this statement to Mr. Splain. To the extent Mr. Carroll's alleged statement was made in the nearly three-year window in which Mr. Splain and Mr. Carroll were in a common interest agreement, the alleged statement—which suggests a potential theory of defense—would fall well within the scope of the

6

agreement.  These circumstances raise questions of the "utmost seriousness."  *Mamone*, 543 F.2d at 460 ("[W]e have treated with the utmost seriousness charges that the Government has planted, or benefited from, a spy in the camp of defense counsel.").  The sharing of information regarding such privileged communications would give rise to a Sixth Amendment violation if "privileged information was passed to the government and prejudice resulted, or [if] the government intentionally invaded the attorney client relationship and prejudice resulted."  *United States v. Baslan*, No. 13 Cr. 220 (RJD), 2014 WL 3490682, at *3 (E.D.N.Y. July 11, 2014); *see also, e.g.*, *Weatherford*, 429 U.S. at 554 (likely Sixth Amendment violation if "prosecution learned [from an informant] . . . the details of . . . conversations about trial preparations"); *United States v. Stein*, 541 F.3d 130, 153 (2d Cir. 2008) (concluding that "the government's pre-indictment conduct" had "post-indictment effects of Sixth Amendment significance"); *United States v. Ginsberg*, 758 F.2d 823, 833 (2d Cir. 1985) ("Unquestionably, government interference in the relationship between attorney and defendant may violate the latter's right to effective assistance of counsel.").

The government's production of its brief handwritten notes of a conversation with counsel for Mr. Splain does not come close to resolving the issue.  As explained above, the notes do not support the government's representations about whether Mr. Splain or Mr. Carroll initiated both communications, or whether Mr. Splain sought to avoid discussion of the investigation, suggesting either that the representations are (a) unfounded, or (b) based on some other undisclosed source, such as communications with Mr. Splain himself about the alleged conversations.  And the notes certainly do not establish that the government gave the necessary instructions to Mr. Splain.

Because the government's notes do not resolve the issue raised by Mr. Carroll—and could in fact be evidence that there have been violations in this case—Mr. Carroll respectfully requests that the Court direct the government to produce all Form FD-302s (or other notes) related to interviews with Mr. Splain so that Mr. Carroll may understand whether Mr. Splain was given proper cautionary instructions, whether Mr. Splain shared additional information about defense strategies or common interest communications with the government, when the alleged conversation about Mr. Pappagallo's "culture of jokes and looseness" allegedly occurred, and whether the government's questioning of Mr. Splain directly or indirectly invited Mr. Splain to share such communications or strategies.  The disclosure of these materials—which report and summarize investigators' interviews with Mr. Splain—is necessary for Mr. Carroll to evaluate the scope of any Sixth Amendment violations and, if needed, consider possible remedies. *See United States v. Rittweger*, 524 F.3d 171, 181 n.4 (2d Cir. 2008) (explaining that early disclosure of discovery material is warranted when necessary to satisfy "constitutional requirement[s]").

## CONCLUSION

For the foregoing reasons, Mr. Carroll respectfully requests an order directing the government to produce all Form FD-302s (or other notes) relating to the government's interviews with Mr. Splain.

Dated: New York, New York
December 20, 2019

Respectfully submitted,

/s/ Peter G. Neiman
PETER G. NEIMAN
ANJAN SAHNI
MICHELLE NICOLE DIAMOND
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

WILLIAM R. MCLUCAS
BRENDA E. LEE
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000

*Counsel for Michael Carroll*