**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA </br></br> v. </br></br> MICHAEL CARROLL and </br> MICHAEL PAPPAGALLO, </br></br> Defendants. | No. 19-cr-545 (CM) |

**MEMORANDUM OF LAW IN SUPPORT OF MICHAEL CARROLL'S**
**MOTION TO COMPEL PRODUCTION OF *BRADY* MATERIAL**

**TABLE OF CONTENTS**

Introduction ........................................................................................................................................1

Statement of Facts ............................................................................................................................2

    I.     The Government And The SEC's Joint Investigation ....................................................2

    II.    Mr. Carroll's Repeated Requests For *Brady* Material ....................................................3

Argument ..........................................................................................................................................6

    I.     The Government Should Produce Evidence Supporting Its Claim That AFFO Is The Most Important Financial Measure For REITs ...............................................................7

    II.    The Government Should Review The SEC's Full Investigative File ............................9

        A.     The Government Conducted A Joint Investigation With The SEC .........................9

        B.     The SEC's Evaluation Process Materials May Contain Critical *Brady* Material That Must Be Disclosed ..........................................................................................12

Conclusion .....................................................................................................................................13

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Brady v. Maryland*,
 373 U.S. 83 (1963) .................................................................................................... *passim*

*Kyles v. Whitley*,
 514 U.S. 419 (1995) ...........................................................................................................10

*Lewis v. Connecticut Commissioner of Correction*,
 790 F.3d 109 (2d Cir. 2015) ............................................................................................6, 9

*United States v. Avellino*,
 136 F.3d 249 (2d Cir. 1998) ..........................................................................................9, 10

*United States v. Blaszczak*,
 308 F. Supp. 3d 736 (S.D.N.Y. 2018) .................................................................................9

*United States v. Brumel-Alvarez*,
 991 F.2d 1452 (9th Cir. 1992) ..........................................................................................12

*United States v. Collins*,
 No. S1 18 Cr. 567 (VSB), 2019 WL 4296206 (S.D.N.Y. Sept. 6, 2019) .................................10

*United States v. Connolly*,
 No. 16 Cr. 370 (CM), 2017 WL 945934 (S.D.N.Y. Mar. 2, 2017) .........................................11

*United States v. Gupta*,
 848 F. Supp. 2d 491 (S.D.N.Y. 2012) ...........................................................................9, 13

*United States v. Hutcher*,
 622 F.2d 1083 (2d Cir. 1980) .............................................................................................8

*United States v. JB Tax Professional Services, Inc.*,
 No. 13 Cr. 127 (JCW), 2014 WL 2533773 (E.D. La. June 5, 2014) .........................................8

*United States v. Kohring*,
 637 F.3d 895 (9th Cir. 2011) ............................................................................................12

*United States v. Martoma*,
 990 F. Supp. 2d 458 (S.D.N.Y. 2014) .........................................................................10, 11

*United States v. Meregildo*,
 920 F. Supp. 2d 434 (S.D.N.Y. 2013) .................................................................................8

```
```

*United States v. Middendorf*,
   No. 18 Cr. 36 (JPO), 2018 WL 3956496 (S.D.N.Y. Aug. 17, 2018) ....................................... 11

*United States v. Morell*,
   524 F.2d 550 (2d Cir. 1975) ................................................................................................. 10

**Docketed Cases**

*United States v. Block*, No. 16-Cr-595 (JPO) (S.D.N.Y.) ...................................................... *passim*

Defendant Michael Carroll respectfully submits this memorandum of law in support of his motion to compel the government to produce material it is required to disclose under *Brady v. Maryland*, 373 U.S. 83 (1963).

## INTRODUCTION

The government's handling of its *Brady* obligations has been troubling since the start of this case. After the government twice represented that it was unaware of any *Brady* material concerning Mr. Carroll, counsel for Mr. Carroll discovered extensive *Brady* material in the nearly 100,000 documents produced by the government, which the government either failed to identify or failed to appreciate as exculpatory. The government has belatedly begun to produce *Brady* material—much of which has been in its possession for years but was produced for the first time months after Mr. Carroll was indicted. Mr. Carroll received the government's most recent *Brady* production—of materials it has possessed for months—on December 18, 2019.

Counsel for Mr. Carroll has conferred with the government on multiple occasions regarding his *Brady* requests, but the parties have been unable to resolve two discrete requests. These disputes reflect disagreements over which materials the government must review under *Brady* and its progeny and under the explicit instructions provided by this Court at the November 5, 2019 hearing.

Specifically, the government has refused Mr. Carroll's requests that it review for *Brady* material: (1) the government's files from *United States v. Block*, No. 16 Cr. 595 (JPO) (S.D.N.Y.), for any documents supporting the government's assertion that for REITs like Brixmor Property Group Inc. ("Brixmor"), "the single most important financial measure" is Adjusted Funds From Operations ("AFFO"), *see id.*, Tr. at 26:19-20 (June 13, 2017) (ECF No. 124); and (2) all of the SEC's files for this matter, including files related to the SEC's evaluation

1

process, not just the SEC's interview notes.  Because the government refuses, Mr. Carroll is forced to bring these issues to the Court.

## STATEMENT OF FACTS

I.    **The Government And The SEC's Joint Investigation**

The facts underlying this case are described in detail in Mr. Carroll's Motion to Dismiss the Indictment, filed today; this motion will therefore recount only the background pertinent to the issues raised herein.

Mr. Carroll was the Chief Executive Officer ("CEO") of Brixmor, a real estate investment trust ("REIT").  The Indictment alleges that Mr. Carroll, a non-accountant, conspired with three others to "smooth" same-store net operating income ("SS-NOI"), a non-GAAP metric.  In investigating Mr. Carroll, the government and the SEC relied heavily on a brief internal investigation conducted by Brixmor's Audit Committee.  The Committee's investigation lasted a mere five weeks, in which counsel for the Committee interviewed fourteen individuals.  Following this abbreviated investigation, Brixmor determined that it did not need to restate its GAAP financials (because it viewed the alleged errors as immaterial) but that it nonetheless would report its findings to the SEC.  The SEC then initiated a limited follow-up investigation.  It gathered largely the same documents reviewed by Brixmor's Audit Committee and requested additional documents responsive to selective search terms.  *See* Declaration of Michelle Nicole Diamond in Support of Michael Carroll's Motion to Compel Production of *Brady* Materials ("Diamond Decl."), Ex. A (S.D.N.Y. Letter to Carroll, dated Sept. 27, 2019) at 6 (requesting documents responsive to terms like "cookie jar," "smooth earnings," and "meet guidance").

The government became involved shortly thereafter, working hand-in-hand with the SEC.  The SEC shared the documents it received from Brixmor and other third parties with the government.  *Id*. at 4 ("[T]he government is in the process of ensuring that [] we have received,

2

and produced to you, all documents from the SEC that the SEC received from third parties . . . ."). The government made only a few of its own document requests to Brixmor, relying primarily on the documents the SEC shared with it. *Id*. at 1-2 ("[T]he majority of the[] materials [produced pursuant to Rule 16], and specifically, the materials from Brixmor, were produced in response to a series of voluntary requests for documents to Brixmor from the SEC, and to a lesser extent from the Government."). The government and the SEC also jointly attended at least one presentation by counsel for Brixmor and jointly interviewed several witnesses. *See id*., Ex. B (Summary of Interview with Steven Rodriguez, dated June 11, 2019) at USAO_SDNY_0001668 (noting that interviewee was jointly interviewed by agents for the government and the SEC); *id*., Ex. C (Summary of Interview with Don Werdell, dated May 28, 2019) at USAO_SDNY_0001679 (same); *id*., Ex. D (Summary of Interview with Ki Bin Kim, dated July 12, 2018) at USAO_SDNY_0001656 (same); *id*., Ex. E (Summary of Interview with Yolande LeClerc, dated July 13, 2017) at USAO_SDNY_0001687 (same); *id*., Ex. F (Summary of Interview with A.J. Agarwal, dated June 6, 2019) at USAO_SDNY_001695 (same); *id*., Ex. G (Summary of Interview with Bill Gribbin, dated June 19, 2019) at USAO_SDNY_001702 (same). The government and the SEC also jointly attended an April 2019 presentation made on behalf of Mr. Carroll. After their extensive cooperation, the SEC and the government issued simultaneous charging documents and press releases, in which each thanked the other. *See id.*, Ex. H (SDNY Press Release, dated Aug. 1, 2019) at 4 (thanking the SEC); *id*., Ex. I (SEC Press Release, dated Aug. 1, 2019) at 2 (recognizing the government for its assistance).

II.     **Mr. Carroll's Repeated Requests For *Brady* Material**

Mr. Carroll has diligently sought *Brady* material from the outset of this case and has engaged in extensive correspondence with the government in an effort to avoid bringing this issue before the Court. On August 27, 2019, Mr. Carroll made a broad request for *Brady*

material, including "all materials that are exculpatory and/or would tend to: negate the guilt of Mr. Carroll, mitigate the alleged offense, support Mr. Carroll's presentation of his defense(s) or theory of the case, and/or impeach any witnesses." Diamond Decl., Ex. J at 1 (Carroll Letter to S.D.N.Y., dated Aug. 27, 2019). The letter also identified several categories of information that Mr. Carroll believes would constitute *Brady* material. *See id.* at 6-8. Relevant here, Mr. Carroll requested that the government produce "[a]ll documents or analysis or other evidentiary basis" supporting its assertion in a separate prosecution, *Block*, No. 16 Cr. 595, that for REITs like Brixmor, "the single most important financial measure is known as Adjusted Funds From Operations or AFFO." *Id*. at 8 (quoting No. 16 Cr. 595, ECF No. 124 at 26:19-20). He also requested that the government "review all [the] SEC's investigative files and notes . . . for *Brady* materials in that agency's possession." *Id*. at 6.

In letters accompanying its initial Rule 16 production, the government twice represented it was "unaware of any *Brady* material" relating to Mr. Carroll. *Id*., Ex. K (S.D.N.Y. Letter to Carroll, dated Aug. 28, 2019) at 3; *id*., Ex. L (S.D.N.Y. Letter to Carroll, dated Sept. 24, 2019) at 2. However, Mr. Carroll's counsel discovered *extensive Brady* material buried in the nearly 100,000 documents the government produced. *See, e.g.*, *id*., Ex. M (E&Y, Memorandum, dated Feb. 23, 2016) at EY-BRIX-2015-CONCUR-000026 ("Based on our evaluation of both quantitative and qualitative factors, we concluded that the errors are inconsequential individually and in the aggregate on the [audited] financial statements . . . ."); *id*., Ex. N (Deloitte, Memorandum, dated Feb. 2, 2016) at DT-00004896 ("[D]ue to the inconsequential impact to the financial statements (see the SAB 99/108 memo and analysis at A/2518) we have concluded that neither the opening equity nor quarterly financial statements for 2015 need to be restated."); *id*., Ex. O (Summary of Interviews with Michael Mortimer, dated Dec. 12, 2016) at

4

USAO_SDNY_0001645 (noting that when Mr. Mortimer was asked "whether anyone senior to him had been consulted" about certain allegedly improper accounting practices concerning Brixmor's ledger, Mr. Mortimer "responded negative"); *id.* at USAO_SDNY_0001648 (when asked if "anyone senior to [Mr. Mortimer] had instructed anyone to hold over amounts for 2016," Mr. Mortimer responded, "not to his knowledge"). After counsel for Mr. Carroll brought this to the government's attention, the government recanted. The government belatedly began to produce *Brady* material—much of which has been in its possession for years, but was produced for the first time months after Mr. Carroll was indicted, months after the government represented that it was unaware of any *Brady* material, and on the eve of a conference with the Court. *See id.*, Ex. P (S.D.N.Y. Letter to Carroll, dated Nov. 4, 2019) at 5 (disclosing statements made to the government by attorneys representing Brixmor's Audit Committee on October 31, 2016, more than three years before disclosure).

On November 5, 2019, the parties appeared before this Court, and counsel for Mr. Carroll raised concerns about the government's approach to its *Brady* obligations. *See id.*, Ex. Q (Nov. 5, 2019 Hearing Tr.) at 8:14-10:4. The Court advised the government that it "takes *Brady* really, really seriously" and directed the government to "think like a defense lawyer, not like a government lawyer," explaining that "[t]he fact that [the government doesn't] believe it doesn't make it not *Brady*." *Id.* at 14:2-7.

Despite the clear direction from the Court, the government has continued to refuse two of Mr. Carroll's requests that seek material likely to contain critical exculpatory evidence:

*First*, the government has refused to produce any information supporting its contention in *Block* that AFFO, rather than SS-NOI, is the most important financial metric for REITs like Brixmor. The government has taken the position that it "is not obligated to provide discovery

5

materials from other cases," *id.*, Ex. A at 4, and that it need not produce such documents because its statements in *Block* regarding AFFO were "made based on the trial proceedings, including testimony and exhibits . . . ," *id.*, Ex. R (S.D.N.Y. Letter to Carroll, dated Dec. 6, 2019) at 3.

*Second*, with regard to Mr. Carroll's request that it search the SEC's files, the government has finally agreed to "attempt to obtain and review . . . testimony, proffers, witness statements, affidavits, declarations, transcripts, recordings, reports, and presentations made or supplied to the SEC in connection with its investigation in this matter." *Id.* at 2. However, it has explicitly refused to "obtain or review the materials created by the SEC as part of its 'evaluation process'" because, in its view, the government's investigation was not conducted jointly with the SEC and the SEC's assessment of its case is not relevant. *Id.*

Mr. Carroll's requests seek material that fall squarely within the government's *Brady* obligations. *See Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015) (explaining that the failure to disclose material, exculpatory evidence that the defendant did not know of, or should not reasonably have known of, violates *Brady*). Mr. Carroll now respectfully moves for an order directing the government to abide by its obligations and comply with Mr. Carroll's requests.

## ARGUMENT

This motion arises out of a discrete legal dispute between the parties concerning *where* the government must look to satisfy its *Brady* obligations. The government should not be allowed to maintain its refusal to turn over any evidence supporting its contention in *Block* that AFFO—not SS-NOI—is the most important financial metric for REITs like Brixmor. Such evidence is patently exculpatory. There is no allegation that Brixmor misreported AFFO, and the importance of that metric (and all the GAAP metrics that Brixmor accurately reported) materially decreases the possibility that SS-NOI was also an important component of the total

6

mix of information provided. The government should therefore turn over any documents in its possession from the *Block* prosecution supporting that assertion.

Nor should the government—which relied on the SEC for investigative documents, jointly interviewed multiple witnesses with the SEC, and invited the SEC to attend presentations made by counsel—be allowed to shirk its responsibility to identify exculpatory material in the SEC's portion of the investigative file. The government takes the position that it did not jointly investigate Mr. Carroll with the SEC, and so is free to pick and choose which SEC files related to the case it will voluntarily agree to review for *Brady* material. Having conducted a joint investigation with the SEC, the government cannot now cherry-pick the portions of the SEC file it is willing to review.

I.     **The Government Should Produce Evidence Supporting Its Claim That AFFO Is The Most Important Financial Measure For REITs**

In another recent prosecution, the government took the position that AFFO—not SS-NOI—is, "[f]or REITs . . . the single most important financial measure." *See* Transcript at 17, *United States v. Block*, No. 16 Cr. 595 (JPO) (June 13, 2017) (ECF No. 124 at 26:19-20). The importance (or lack thereof) of SS-NOI compared against other GAAP and non-GAAP metrics is critical to the government's burden of proving materiality in the case against Mr. Carroll. Accordingly, Mr. Carroll requested that the government produce any materials in its possession supporting its view in *Block* that AFFO is the most important metric to REITs like Brixmor.

The government did not dispute the materiality of the information sought. Instead, it argued that it is not obligated to produce material from other cases, noting that its argument in *Block* was made based on trial proceedings, including testimony and exhibits. This contention is unavailing. If the United States Attorney's Office for the Southern District of New York gathered evidence in connection with the *Block* prosecution tending to show that AFFO is the

7

most important financial metric to REITs, such material is necessarily exculpatory because it suggests that SS-NOI is a relatively less important financial metric to investors. For example, if the government identified certain characteristics of AFFO that evince its importance to investors that are not true of SS-NOI—*e.g.*, that AFFO is used in numerous analysts' REIT valuation models whereas SS-NOI is not—that evidence would belie the government's allegations about the importance of SS-NOI. Indeed, the government has already acknowledged the exculpatory effect of evidence suggesting that SS-NOI is less important to the investing public. *See* Ex. P at 4 (disclosing in a *Brady* letter that the government and the SEC "spoke with investors in Brixmor whose investment patterns were not principally driven by SS-NOI" and offering to "disclose the identities of these investors"). That, in turn, undermines the government's theory that the alleged small-dollar adjustments to SS-NOI were material.

If the government has such material in its possession, the government has a duty to disclose that patently exculpatory material to Mr. Carroll. It is not excused from doing so merely because the exculpatory material was gathered in connection with another prosecution by the same prosecutor's office. While "[t]he constructive knowledge of the prosecutor is not limitless . . . ," *United States v. Meregildo*, 920 F. Supp. 2d 434, 440 (S.D.N.Y. 2013), Mr. Carroll is not requesting evidence "that the [government] never had in its files, never inspected, [or] *never knew about*," *United States v. Hutcher*, 622 F.2d 1083, 1088 (2d Cir. 1980) (emphasis added); *see also United States v. JB Tax Prof'l Servs., Inc.*, No. 13 Cr. 127 (JCW), 2014 WL 2533773, at *2-3 (E.D. La. June 5, 2014) (explaining that government's *Brady* obligations turn on the "extent to which the prosecutor has knowledge of and access to the documents"). The government cannot claim it lacks access to documents regarding the importance of AFFO gathered in connection with a case that the same office litigated just last year. Nor can it claim it lacks

8

knowledge of the documents, since Mr. Carroll's counsel repeatedly brought the issue to the government's attention. The government, having been repeatedly made aware of this source of potentially exculpatory material within its possession, cannot now blind itself to that material. *See United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) ("To the extent that the prosecutor knows of material evidence favorable to the defendant in a criminal prosecution, the government has a due process obligation to disclose that evidence to the defendant.").

The government also asserts that it need not comply with Mr. Carroll's request because "the Government's arguments in [*Block*] were made based on the trial proceedings, including testimony and exhibits, all of which are matters of public record." Ex. R at 3. That response altogether misses the point of Mr. Carroll's request, which is for exculpatory information regarding AFFO that the government possesses but that was *not* made public in *Block*. A defendant's access to exculpatory evidence, reasonably available only from the government, is the heart of *Brady*. *See Lewis*, 790 F.3d at 121 (explaining that the failure to disclose material, exculpatory evidence that the defendant did not know of, or should not reasonably have known of, violates *Brady*). Accordingly, the government should review its files from *Block* for documents suggesting that AFFO, not SS-NOI, is the most important financial metrics to REITs.

II.     **The Government Should Review The SEC's Full Investigative File**

    A.     **The Government Conducted A Joint Investigation With The SEC**

Courts in the Second Circuit have routinely held that "[w]here the [government] conducts a 'joint investigation' with another state or federal agency, . . . the prosecutor's duty extends to reviewing the materials in the possession of that other agency for *Brady* evidence." *United States v. Gupta*, 848 F. Supp. 2d 491, 493 (S.D.N.Y. 2012); *see also United States v. Blaszczak*, 308 F. Supp. 3d 736, 741 (S.D.N.Y. 2018) ("[*Brady*] extends to anyone who is an 'arm of the prosecutor.'" (quoting *United States v. Morell*, 524 F.2d 550, 555 (2d Cir. 1975))); *United States*

9

*v. Martoma*, 990 F. Supp. 2d 458, 462 (S.D.N.Y. 2014) ("[T]he Court finds that the USAO and the SEC conducted a joint investigation of the Defendant, and therefore the USAO's obligation to produce communications in accordance with this Court's January 4, 2014 order extends to documents in the sole possession of the SEC."). *See also Kyles v. Whitley*, 514 U.S. 419, 437 (1995) (the government "has a duty to learn of any favorable evidence known to the others acting on [its] behalf in the case, including the police"). That obligation extends to *all* such files, not just the ones the government wishes to review. *Avellino*, 136 F.3d at 255 ("[The government] has a duty to learn of *any* favorable evidence known to the others acting on the government's behalf in the case . . . ." (citation and quotation marks omitted) (emphasis added)).

Assessing whether a joint investigation occurred is "a fact-specific inquiry" involving consideration of the "'degree of cooperation between agencies,' . . . such as their coordination in conducting witness interviews and otherwise investigating the facts of the case." *Martoma*, 990 F. Supp. 2d at 461 (quoting *United States v. Ferguson*, 478 F. Supp. 2d 220, 238 (D. Conn. 2007)). In determining whether a joint prosecution occurred, courts consider a few factors, such as the extent to which the other agency shared documents with the government, jointly interviewed witnesses, jointly presented the case to the grand jury, and was otherwise involved in the development of prosecutorial strategy. *See United States v. Collins*, No. S1 18 Cr. 567 (VSB), 2019 WL 4296206, at *6 (S.D.N.Y. Sept. 6, 2019).

Here, the degree of cooperation between the government and the SEC demonstrates that the two agencies conducted a joint investigation. The government relied almost entirely on the SEC to collect documents from Brixmor and other third parties. As noted above, the SEC's document-collection process drew largely on Brixmor's own five-week internal investigation, and the SEC shared whatever it obtained with the government. Indeed, as the government

10

acknowledged, the majority of the materials within its possession were initially produced by Brixmor and other third parties to the SEC. Ex. A at 1-2. The government made only a small number of supplementary requests for documentation. *See id*. at 6-8; *id*. at 1-2 ("[T]he majority of the[] materials [produced pursuant to Rule 16] . . . were produced in response to a series of voluntary requests for documents to Brixmor from the SEC, *and to a lesser extent from the Government*." (emphasis added)). The sharing of documents is strong evidence that the government and another agency are engaged in a joint investigation, particularly where, as here, the government effectively outsourced the document-collection process to the SEC. *See Martoma*, 990 F. Supp. 2d at 461 (citing the fact that "[t]he SEC . . . provided the USAO with documents it obtained during its investigation" as evidence of a joint investigation); *United States v. Middendorf*, No. 18 Cr. 36 (JPO), 2018 WL 3956494, at *4 (S.D.N.Y. Aug. 17, 2018) (citing sharing of documents as a factor to consider in joint-investigation analysis).

Perhaps most significantly, the government and the SEC conducted numerous joint interviews, including interviews of Brixmor employees and several investors (whose views are relevant to the government's burden to demonstrate materiality). The government, by participating in multiple interviews with the SEC, engaged in the kind of shared fact-gathering that is a hallmark of joint investigations. *See Martoma*, 990 F. Supp. 2d at 461 (citing the fact of joint interviews as evidence for a joint investigation). *Cf. United States v. Connolly*, No. 16 Cr. 370 (CM), 2017 WL 945934, at *7 (S.D.N.Y. Mar. 2, 2017) (observing that "the Government did not conduct any joint witness interviews or coordinate depositions with the SEC" in supporting its conclusion that there was no joint investigation). And the government and the SEC coordinated their investigation in other ways, including by jointly attending an April 2019 presentation on behalf of Mr. Carroll, and at least one presentation by counsel for Brixmor. The

simultaneous charging documents and press comprise the coda to the government and SEC's joint investigation.  *See* Exs. H & I.

### B. The SEC's Evaluation Process Materials May Contain Critical *Brady* Material That Must Be Disclosed

The government maintains it did not conduct a joint investigation with the SEC but has nonetheless agreed to review the SEC's investigative files for some—but not all—*Brady* evidence.  Specifically, it has agreed to review interview notes created by the SEC in connection with the SEC's investigation into Brixmor and "to obtain and review . . . testimony, proffers, witness statements, affidavits, declarations, transcripts, recordings, reports, and presentations made or supplied to the SEC in connection with its investigation in this matter."  Ex. R at 2.  However, the government has refused Mr. Carroll's requests that it review the SEC's evaluation process.  It contends that the SEC's assessment or evaluation of the facts of this case is not "relevant or subject to disclosure."  *Id*.  But of course, SEC assessment or evaluation documents may reference *exculpatory facts* not disclosed elsewhere.  The government may not artificially circumscribe its review of SEC file documents that may reflect exculpatory facts.  And more generally, the views of SEC officials may themselves be exculpatory facts, given the agency's role and expertise in policing financial markets.  A reasonable juror could find an SEC official's skepticism about the importance of SS-NOI to the financial markets as providing reasonable doubt on materiality here.  *Brady* requires that the government disclose such evidence.  *See United States v. Kohring*, 637 F.3d 895, 907-08 (9th Cir. 2011) (holding that government violated *Brady* by failing to disclose "underlying exculpatory facts" in document containing prosecutor's impressions of witness); *United States v. Brumel-Alvarez*, 991 F.2d 1452, 1458, 1463 (9th Cir. 1992) (*Brady* violation where government failed to disclose unredacted internal

memorandum written by Drug Enforcement Administration agent critically evaluating witness's "integrity and role during the course of the undercover investigation").

Simply put, the government engaged in joint fact-gathering with the SEC. It cannot now "disclaim such cooperation to avoid [its] . . . discovery obligations" to search for and produce *all* exculpatory materials in the SEC's files. *Gupta*, 848 F. Supp. 2d at 492. The government should therefore review the entire SEC investigative file, including evaluative evidence, for exculpatory evidence.

## CONCLUSION

For the foregoing reasons, Mr. Carroll respectfully requests an order directing the government to produce *Brady* material responsive to his requests.

Dated: New York, New York
December 20, 2019

Respectfully submitted,

/s/ Peter G. Neiman
PETER G. NEIMAN
ANJAN SAHNI
MICHELLE NICOLE DIAMOND
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

WILLIAM R. MCLUCAS
BRENDA E. LEE
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000

*Counsel for Michael Carroll*