USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/9/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------x

UNITED STATES OF AMERICA,

    -against-

MICHAEL CARROLL and
MICHAEL PAPPAGALLO,

    Defendants.

----------------------------------------x

19 CR 545 (CM)

DECISION AND ORDER ON NON-PARTY BRIXMOR PROPERTY GROUP INC.'S
MOTION TO QUASH CERTAIN RULE 17(c) SUBPOENA REQUESTS BY DEFENDANTS

McMahon, C.J.:

Michael Carroll and Michael Pappagallo are charged with conspiracy to commit various securities offenses, as well as actual substantive violations of securities law. The matter is in the pretrial motions stage—no trial date has been set.

Before the Court is a motion by non-party Brixmor Property Group Inc., to quash certain subpoena requests by the defendants.

Defendant Carroll's subpoena to Brixmor seeks documents from the period January 1, 2011 to December 31, 2016:

    Request 1: All Documents and Communications contained in Michael Carroll's Brixmor e-mail account, including, but not limited to all attachments to any Communications, sent or received during the Relevant Period.

    Request 2: All entries from the electronic calendar maintained by Michael Carroll at Brixmor during the Relevant Period.

    Request 3: All Documents reviewed or prepared by PricewaterhouseCoopers in connection with creating Brixmor's historical financial records prior to its initial public offering in 2013.

1

Request 4: All Documents relied upon by the Board in deciding that Michael Carroll, Michael Pappagallo, Steven Splain, and Michael Mortimer should resign from Brixmor.

Request 5: All Documents and Communications contained in Stacy Slater's Brixmor e- mail account that were exchanged with any Analyst covering Brixmor, including but not limited to all attachments to any Communications, sent or received during the Relevant Period.

Pappagallo's subpoena to Brixmor seeks:

Request 1: Communications sent or received between January 1, 2012 and May 19, 2013 from the e-mail accounts of Steven Splain and Michael Mortimer.

Request 2: Communications concerning eight broad subject matters, including lease settlement income and the 2617 account, from the e-mail accounts of Michael Mortimer, Steven Splain, Jeong (John) Chang, Ralph Lalli, Daniel Reilly, William Gribbin, John Mobley, Rachel Shopf, Gregory Berger, and Terry Weiler.

Request 3: Documents reflecting the internal control framework, testing, and procedures concerning the 2617 Account and the LSI Account.

Request 4: Documents relied upon by the Board in deciding that Carroll, Pappagallo, Splain, and Mortimer should resign from Brixmor.

Request 5: Stacy Slater's notes recording discussions at meetings with analysts and investors from October 1, 2013 through December 31, 2015.

Request 6: Documents from January 1, 2012 through May 19, 2013 providing Brixmor's definition of Same Store Net Operating Income or Same Property Net Operating Income.

Request 7: Quarterly compliance certificates signed by 21 individuals in connection with the preparation of Brixmor's 10-Q and/or 10-K reports and similar certificates signed in connection with the preparation of Brixmor's quarterly supplemental reporting package, for each of the quarterly year end periods from July 2013 through December 2015.

Brixmor and defendants have been conferring since the subpoenas were first served in November, 2019. Brixmor has agreed to comply with Carroll's Requests 2 and 5, as written, and have reached and understanding as to Requests 3 and 4; thus, mooting Bixmor motion as to those requests. However, the parties were unable to reach an agreement on Carroll Request 1.

2

In regard to the Pappagallo requests, Brixmor has agreed to comply with Requests 3, 5, 6, and 7, as written, and to produce a limited amount of materials in response to Request 4. Brixmor was unable to reach an agreement with Pappagallo on his Requests 1 and 2.[1]

This court will evaluate the remaining disputed requests—Carroll Request 1 and Pappagallo Requests 1 and 2—as written and will not attempt to carve out or prune the requests for the parties. The court has no interest in hearing about the parties' confidential negotiations and will not speculate about the reasonableness or unreasonableness of their failure to agree on compromises for those three requests. I will simply adjudicate the matter; the only words that matter to me are the words in the subpoenas that have been served.

The Court evaluates Rule 17 subpoena requests applying the factors set forth by the Supreme Court in *United States v. Nixon*, 418 U.S. 683, 699-700 (1974), not the factors preferred by Judge Scheindlin in *United States v. Nachamie*, 91 F. Supp. 2d 552, 562 (S.D.N.Y. 2000). In order to obtain documents prior to trial, the party making the request must demonstrate that:

(1) the documents sought are evidentiary and relevant;

(2) the materials are not otherwise procurable in advance of trial by the exercise of due diligence;

(3) the party seeking documents cannot properly prepare for trial without such production and inspection in advance of trial and the failure to obtain such inspection may tend unreasonably to delay the trial; and

(4) the application is made in good faith and is not intended as a general fishing expedition.

---

[1] In addition, the relevant parties reached agreements on subpoenas defendants served on the law firm Simpson Thacher & Bartlett, forensic accounting firms Alvarez & Marsal and Marks Paneth, and accounting firm PricewaterhouseCoopers.

3

*United States v. Nixon*, 418 U.S. at 699-700 (citation omitted).

Carroll's request for every email in his account for five years does not meet the *Nixon* standards. It is wildly overbroad. It is not humanly possible for every email on every subject to bear on Carroll's *mens rea* in connection with this particular crime. Indeed, it is highly unlikely that his every email on the subject of "same store net operating income" ("SS-NOI") would bear on his *mens rea*, and those emails have already been produced to the Government by Brixmor pursuant to the search terms– so defendant has those emails. Moreover, the fact that Carroll was acting legally with respect to other issues facing the company, or the fact that he was not deeply involved in accounting issues (assuming those facts to be true) does not mean that he acted legally with respect to SS-NOI or that he was not involved in this particular accounting issue. So not only is the request overbroad, it does not seek relevant and admissible evidence on the issue of *mens rea*. It is a total stretch. The request is denied.

Furthermore, I know of no rule that requires the Government to obtain every communication made by or to a defendant on any and every subject. If there is some identifiable subject that relates to this indictment that Carroll thinks the Government should have requested, and if he can justify the relevance of that request and the admissibility of emails that would be obtained thereby, then he should serve a much more narrowly tailored subpoena than this one. Carroll's ability to convince the court that he can do so is, of course, undermined by the statement in his brief that "there is no realistic way to identify the most pertinent emails without collecting all of them." But he is always free to try.

Pappagallo's request for all emails from the accounts of the cooperators, Splain and Mortimer, is equally overbroad; and for the reasons articulated by Brixmor and by the court in

response to Carroll's motion is denied. The Government is of course on notice that, to the extent it has reviewed the emails of these gentlemen from the period in question (and I would be surprised if it had not, but then, the Government frequently surprises me) and those emails contain exculpatory matter, the emails must be produced, as *Brady*, by the Government, not by Brixmor. To the extent the Government has in its possession emails containing statements by its witnesses, that information is 3500 material and will be produced several weeks prior to trial and not before. And I remind defendant that, if illegal activity was going on before he joined Brixmor and he participated in it after he arrived at Brixmor, the fact that it was not his idea, or that it began before he joined the conspiracy, would be no defense– which further bears on the relevance and admissibility of these documents.

That leaves Pappagallo's second request. Although Pappagallo apparently proposed modifications to Request 2, he is still asking for all communications referencing eight broad accounting subjects from the e-mail accounts of numerous employees of Brixmor's accounting department, including Mortimer, Splain, Jeong (John) Chang, Ralph Lalli, Daniel Reilly, William Gribbin, John Mobley, Gregory Berger, and Terry Weiler. Brixmor contends, and logic would suggest, that very few e-mails from those broad searches would touch on the narrow non-GAAP accounting metric at issue in this case— SS-NOI. As a result, the proposed search terms, while terms frequently used by Brixmor employees in the ordinary course of business, would yield scant communications that address the operative issue in the instant case. Moreover, according to Brixmor, it already searched for and likely produced the e-mails that involved the topics listed in Request 2, including SS-NOI. Pappagallo's desire to have the Company conduct additional searches for emails relating to these topics, unbounded by any connection to SS-NOI,

is exactly the type of unreasonable or oppressive requests that Rule 17(c) prohibits.

Accordingly, Brixmor's motion to quash Carroll Request 1 and Pappagallo Requests 1 and 2 is granted.

This constitutes the decision and order of the Court.

January 9, 2020

_____
Colleen McMahon
Chief Judge


BY ECF TO:

ALL PARTIES AND NON- PARTY MOVANT BRIXMOR PROPERTY GROUP, INC.