UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

MICHAEL CARROLL and MICHAEL PAPPAGALLO,

                 Defendants.

No. 19 Cr. 545

**Oral Argument Requested**

**OMNIBUS REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**MICHAEL V. PAPPAGALLO'S MOTION TO DISMISS THE INDICTMENT**
**AND FOR A BILL OF PARTICULARS**

Gregory W. Kehoe
Robert A. Horowitz
Daniel P. Filor
GREENBERG TRAURIG LLP
200 Park Avenue
New York, NY 10116
(212) 801-9200
*Counsel for Michael V. Pappagallo*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ……………………………………………………………1

ARGUMENT.................................................................................................................................2

I.    THE MOTION TO DISMISS SHOULD BE GRANTED BECAUSE THE ALLEGED MISSTATEMENTS ARE QUANTITATIVELY AND QUALITATIVELY IMMATERIAL ..................................................................................................................2

    A.    The Court Can Rule on Materiality Issues at the Motion to Dismiss Stage ........... 2

    B.    The Government Fails to Adequately Allege Quantitative Materiality.................. 3

    C.    The Government Fails to Adequately Allege Qualitative Materiality.................... 5

II.    THE MOTION FOR A BILL OF PARTICULARS SHOULD BE GRANTED BECAUSE THE GOVERNMENT HAS FAILED TO EXPLAIN THE BASES FOR ITS ADJUSTMENTS AND FOR ITS ALLEGATION THAT THE ORIGINAL ACCOUNTING ENTRIES WERE FRAUDULENT.......................................................... 8

    A.    The Government Has Failed to Produce Any Documents or Explanations as to the Bases Underlying the Government's Adjustments.....................................................9

    B.    The Government's Opposition Broadly Misstates Mr. Pappagallo's Request for the Rationale Behind the Adjustments to the Categories…………………………....13

CONCLUSION............................................................................................................................ 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ECA & Local 134 v. JPMorgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009)......................................................................................................2

*Ganino v. Citizens Utilities Co.*,
   228 F.3d 154 (2d Cir. 2000)..................................................................................................4, 7

*In re Ply Gem Holdings, Inc. Sec. Litig.*,
   135 F. Supp. 3d 145 (S.D.N.Y. 2015)………..……………………………….…….4

*In re Ply Gem Holdings*,
   2016 WL 533954 (S.D.N.Y. Sep. 23, 2016)………………………….............................4

*Ironworkers Local 580-Joint Funds v. Linn Energy, LLC*,
   29 F. Supp. 3d 400 (S.D.N.Y. 2014).......................................................................................3

*SEC v. Escala Group, Inc.*,
   No. 09 Civ. 2646 (DLC), 2009 U.S. Dist. LEXIS 67225 (S.D.N.Y. July 31,
   2009) ...................................................................................................................................5, 6

*SEC v. Leslie*,
   No. 5:07-cv-03444-JF (PSG), 2012 U.S. Dist. LEXIS 4659 at *3-4 (N.D. Cal.
   Jan. 13, 2012).........................................................................................................................6

*SEC v. Price Waterhouse*,
   797 F. Supp. 1217 (S.D.N.Y. 1992)........................................................................................9

*Takara Tr. v. Molex Inc.*
   429 F. Supp. 2d 960 (N.D. Ill. 2006) ......................................................................................6

*United States v. Bin Laden*,
   92 F. Supp. 2d 225 (S.D.N.Y. 2000).....................................................................................11

*United States v. Block*,
   16-CR-595 (JPO), 2017 U.S. Dist. LEXIS 65169 (S.D.N.Y. April 28, 2017) ........................12

*United States v. Bonventre*,
   646 F. App'x 73 (2d Cir. 2016) .............................................................................................13

*United States v. Bortnovsky*,
   820 F.2d 572 (2d Cir. 1987)...................................................................................................11

*United States v. Connolly*,
  S1 16-cr-00370 (CM), 2017 U.S. Dist. LEXIS 82156 (S.D.N.Y. May 24, 2017) ...................................................................................................................12

*United States v. Gall*,
  No. 3:95cr98 (AHN), 1996 U.S. Dist. LEXIS 23133 (D. Conn. Aug. 12, 1996) ....................13

*United States v. Leonelli*,
  428 F. Supp. 880 (S.D.N.Y. 1977) ...........................................................................................13

*United States v. Nachamie*,
  91 F. Supp. 2d 565 (S.D.N.Y. 2000) ..................................................................................9, 12

*United States v. Savin*,
  No. 00 Cr. 45 (RWS), 2001 U.S. Dist. LEXIS 2445 (S.D.N.Y. Mar. 7, 2001) .......................10

*United States v. Strawberry*,
  892 F. Supp. 519 (S.D.N.Y. 1995) ..........................................................................................11

*United States v. Tuzman*,
  301 F. Supp. 3d 430 (S.D.N.Y. 2017) .....................................................................................12

*United States v. Vaid*,
  16 Cr. 763 (LGS), 2017 U.S. Dist. LEXIS 143495 (S.D.N.Y. Sept. 5, 2017) ........................11

**Regulations**

64 Fed. Reg. 45,150, 45,152 (Aug. 19, 1999) No. 99……………………………………..3, 4, 7, 8

This reply memorandum of law is submitted in further support of Mr. Pappagallo's motion to dismiss the Indictment and for a bill of particulars ("Reply").

## **PRELIMINARY STATEMENT**

Contrary to the government's assertions, the Indictment's alleged accounting misstatements are both quantitatively and qualitatively immaterial. The government's unprecedented materiality theory diverges from the well-established standards Brixmor's independent auditors relied upon in determining that Brixmor's adjustments to quarterly SSNOI were immaterial. Indeed, Brixmor was not required to (nor did it) restate its prior financial statements or results of operations to reflect those adjustments. In an effort to engineer quantitative materiality, the government measures materiality by focusing on SSNOI growth percentage rather than on SSNOI itself (the "percentage of a percentage" theory). The government has remarkably attempted to do so even though, by definition, the SSNOI growth percentage is simply the product of comparing SSNOI over two periods. Moreover, the Indictment does not even address the qualitative materiality issue, because clearly, the government's allegations fail on virtually every qualitative factor referenced in SAB 99.

As for the bill of particulars, the government describes its case as predicated upon an "overall accounting scheme" to report false SSNOI Growth, and the Indictment alleges the impact of various unspecified accounting adjustments to Brixmor's reported SSNOI. In an effort to avoid providing particulars concerning the alleged accounting scheme, the government suggests it is not required to prove "any particular fraudulent conveyance of information, or any particular fraudulent accounting entry." Government Opposition Brief (Dkt. 65) ("Opp.") at 36. An accounting scheme necessarily involves fraudulent accounting. The defense is not seeking to discover the government's trial strategy. Mr. Pappagallo is simply requesting that the government

1

be ordered to provide a bill of particulars setting forth the bases for the adjustments made to the categories of accounting entries listed in the government's Appendix to its Opposition Brief (Dkt. 65-2),[1] and why the original Brixmor accounting in the Categories was allegedly fraudulent.[2]

## ARGUMENT

I. **THE MOTION TO DISMISS SHOULD BE GRANTED BECAUSE THE ALLEGED MISSTATEMENTS ARE QUANTITATIVELY AND QUALITATIVELY IMMATERIAL**

    A. **The Court Can Rule on Materiality Issues at the Motion to Dismiss Stage**

In an effort to skirt any analysis of its novel "percentage of a percentage" theory, the government has filed an Opposition rife with misleading and erroneous statements regarding both quantitative and qualitative materiality. First, the government contends that defendants' materiality arguments are "directed to the wrong audience," (Opp. at 11), mistakenly insinuating that materiality questions are not justiciable at the motion to dismiss stage. To the contrary, courts routinely grant motions to dismiss based on a failure to assert a material misstatement. *See ECA & Local 134 v. JPMorgan Chase Co.*, 553 F.3d 187, 205 (2d Cir. 2009) (affirming at the motion to dismiss stage that "we cannot reasonably infer that [the alleged misstatements] would have been viewed by a reasonable investor as having significantly altered the total mix of information

---

[1] The Government identifies categories of accounting adjustments in the Appendix to its Opposition: (a) Common area maintenance fees ("CAM"); (b) Real estate tax ("RET"); (c) Late Fees; (d) Prior-year common area maintenance fees ("PYCM"); (e) UC-tenant credits; (f) UC-tenant deposits; (g) "Adj." (which includes Bankruptcy proceeds, Unvouched, aged POs, Lease termination income, Balance sheet clean-up, and Bad debt expense (*see* Kehoe Decl. Exh. A); (h) "Main" (which includes Bankruptcy proceeds, Stale accrued expenses, Sharpstown co-tenancy, Halloween income, Balance sheet clean-up, Acured expenses related to Regency acquisition, Insurance reimbursement, and Reclass mis-posted amount to RCAM/RRET (*see* Filor Decl. Exh. G (Dkt. 51)); and (i) Lease Settlement Income ("LSI") (collectively, the "Categories").

[2] The Government objects to having to address each and every entry in the Work Papers. To resolve this, Mr. Pappagallo adopts the government's Categories identified *supra* at n. 1, and requests particulars as to why the government's adjustments in each of those Categories was necessary and why Brixmor's original accounting in each of those Categories was fraudulent.

2

made available"); *Ironworkers Local 580-Joint Funds v. Linn Energy, LLC,* 29 F. Supp. 3d 400, 428 (S.D.N.Y. 2014) (granting a motion to dismiss claims that EBITDA, a non-GAAP metric, was reported in a materially misleading manner).  As more fully set forth below, the Indictment fails to sufficiently allege quantitative and qualitative materiality, and so the Indictment should be dismissed.

### B. The Government Fails to Adequately Allege Quantitative Materiality

The government argues that the appropriate measure of quantitative materiality is not the change in SSNOI, but the change in SSNOI *growth*.  This novel "percentage of a percentage" argument defies logic.  SSNOI growth measures the change in SSNOI from one period to another.  In other words, SSNOI growth is a *direct product* of SSNOI, and *does not change* unless there is an underlying change to actual SSNOI.  Put another way, if a company's SSNOI was $100 in Q1 and $101 in Q2, SSNOI growth for that period would be 1%.  If SSNOI in Q2 were instead $102, SSNOI growth would, as a result, be 2%.  By the government's faulty logic, that minor $1 difference should be viewed not as a 1% difference but as an enormous 100% change, which would be twenty times the 5% minimum set by SEC Staff Accounting Bulletin No. 99, 64 Fed. Reg. 45,150, 45,152 (Aug. 19, 1999) ("SAB 99"), for purposes of assessing quantitative materiality.  Implementing the government's novel theory would eviscerate the materiality requirement from the law.

The government's mathematical gymnastics become necessary because the alleged accounting adjustments to SSNOI never approach SAB 99's 5% threshold when properly compared in the context of total SSNOI.  This, however, does not give the government license to substitute an inappropriate comparator for the alleged adjustments and thereby alter the denominator in the equation.  SAB 99 explains that quantitative materiality assessments are made by "comparing adjustments to revenues, gross profit, pretax and net income, total assets,

3

stockholders' equity, or individual line items in the financial statements." *See* SAB 99 fn. 24; *see also Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 163-66 (2d Cir. 2000) (comparing misstated quarterly fees to total net income because quantitative comparison must be against "like items on the corporate financial statement"). Quantitative materiality requires a comparison to an absolute financial statement figure and does not permit one to compare the adjustment to a figure that is itself relative or a percentage. The government's attempt to compare an alleged percentage change to a percentage for its quantitative analysis has rightfully been rejected. *See, e.g.*, *In re Ply Gem Holdings, Inc. Sec. Litig.*, 135 F. Supp. 3d 145, 153 (S.D.N.Y. 2015) (rejecting argument that a decline from 23.9% to 20.2% is a 15% decline instead of a 3.7% decline, thus rejecting a "relative rather than absolute percentage change as the appropriate yardstick under SAB No. 99").[3]

The following example shows the fallacy in the government's methodology of measuring materiality based on the percentage change in percentage growth instead of the percentage change in a financial statement figure. Companies routinely report their net sales in absolute dollars and their percentage growth over a comparable period. Net sales are calculated based on various accounts in the company's general ledger. If the company fraudulently reported its sales growth, the fraudulent accounting was in the general ledger accounts from which its net sales figure was derived. That company did not manipulate its sales growth; it manipulated its net sales, which

---

[3] The government wrongly contends (at Opp. 13-14) that *Ply Gem* supports the use of a quantitative "percentage of a percentage" methodology. *Ply Gem* explicitly rejected that theory, 135 F. Supp. 3d at 153, and the revised complaint survived dismissal because the alleged financial misstatements were compared against *actual* financial metrics including gross profits, earnings and loss – *not* against derived percentages. *See In re Ply Gem Holdings*, 2016 WL 533954, at *3-4 (S.D.N.Y. Sep. 23, 2016). Using "discrete numerical comparators" as "like-to-like comparisons" was necessary to "contextualize the omissions within [the Company's] finances" and "satisf[ied] SAB No. 99's [5%] rule of thumb." *Id.*

4

necessarily resulted in a misstatement of its sales growth. A determination of the materiality of the alleged manipulation would have to be based on the percentage by which its net sales, not net sales growth, was manipulated.

So too with regard to Brixmor's SSNOI, the financial statement figure the government alleges was misstated.[4] Brixmor's SSNOI growth percentage is simply an outgrowth of its SSNOI calculated over two periods. Thus, the materiality of the alleged fraud must be assessed based on the percentage by which Brixmor allegedly misstated its SSNOI. It is senseless to assess materiality based on the percentage change in its SSNOI growth. But using its "percentage of a percentage" theory, this is exactly what the government is trying to do.

Indeed, if Brixmor had only reported its SSNOI and left it to the public to calculate its SSNOI growth, the adjustments of under 1.3% would be unquestionably immaterial. But, under the government's novel theory, because Brixmor not only reported its SSNOI but also did the math to calculate its SSNOI growth, the government's immaterial adjustments to Brixmor's SSNOI incongruously became material. Such a baseless approach should be rejected by the Court.

### C. The Government Fails to Adequately Allege Qualitative Materiality

Aware of its untenable quantitative materiality theory, the government then attempts to bootstrap its materiality argument by shifting to qualitative aspects. The government's statement that "[c]ivil cases have expressly relied on allegations of smoothing in denying motions to dismiss for lack of materiality" is misleading. Opp. at 17. To support this proposition, the government

---

[4] *See*, *e.g.*, Indictment ¶ 21 (alleging defendants "fraudulently included LSI in calculating SS-NOI in order to manipulate Brixmor's quarterly SS-NOI Growth results"); (defendants "fraudulently removed and discussed removing income and/or properties from SS-NOI… Because SS-NOI Growth is essentially a measure of the growth in revenue for a given set of properties between the Comparison Period and the Current Period, reducing the SS-NOI for the Comparison Period or removing an underperforming property from the Same Property Pool has the impact of making the SS-NOI Growth in revenue for the Current Period appear larger.").

5

primarily relies on *SEC v. Escala Group, Inc.*, but interestingly, *Escala* never even mentions the term "smoothing." *See generally* No. 09 Civ. 2646 (DLC), 2009 U.S. Dist. LEXIS 67225 (S.D.N.Y. July 31, 2009). The *Escala* court's basis for denying the defendants' motion to dismiss was largely due to quantitative materiality. *Id.* at *32 (materiality was adequately pled "especially given the fact that the transaction made up 14% of the quarter's pre-tax net income."). On the qualitative side, the court emphasized that the defendants' altering of an outstanding *debt* and falsely recharacterizing it as *income* expressly satisfied SAB 99 because "the transaction masks a change in earnings or whether the misstatement changes a loss into income or vice versa." *Id*. at *33. Obviously, "a reasonable investor would have wanted to know that the revenue from the purported sale was [actually the product of a debt]." *Id*. The government does not have the benefit of any such facts here.

While *SEC v. Leslie*, does mention "smoothing," the government conveniently omits that *Leslie* involved (1) artificial inflation of revenue; (2) "smoothing" of *net income*, a critical GAAP metric; and (3) manipulation of these metrics to such a material degree that the company at issue was required to restate its financials. *See* No. 5:07-cv-03444-JF (PSG), 2012 U.S. Dist. LEXIS 4659 at *3-4 (N.D. Cal. Jan. 13, 2012). Again, none of those facts are present here. Not only is there no accusation that Brixmor's revenue was artificially inflated, the government does not allege anything relating to any GAAP metric.

The government's reliance on *Takara Tr. v. Molex Inc.* is similarly misguided. 429 F. Supp. 2d 960 (N.D. Ill. 2006). In a matter involving artificial inflation of revenue, the *Takara* court noted, "'[t]he keystone of plaintiffs' materiality argument is their allegation that [the defendants'] misrepresentations caused [the company] to appear to be earning more than it was,' in violation of GAAP." *Id*. at 978. Here, the government takes no issue with "the legitimacy of [Brixmor's]

6

income itself," (Opp. at 18), nor does it contend that the alleged misrepresentations caused Brixmor "to appear to be earning" more than it actually was. The government's accusations only concern the mere *timing* of certain accounting items which accounted for less than 1.3% of Brixmor's total SSNOI in the most impacted quarter.

The government's suggestion that Brixmor sought to manage earnings fails. There is no allegation that either of Brixmor's primary earnings metrics, the GAAP metric of Net Income, or the non-GAAP metric of FFO, were misstated. There is not even an allegation that annual SSNOI was "managed." Further, any alleged adjustments to quarterly SSNOI were *de minimis*. Even if one qualitative factor were alleged, however, that could not outweigh the other qualitative factors and quantitative immateriality.

A key qualitative factor courts use to examine materiality under SAB 99 is "whether the misstatement changes a loss into income or vice versa." The government notes that *Ganino* involved a scenario in which a company engaged in a scheme to hide a $10 million loss. Opp. at 17. The *Ganino* court focused on the *dollar amount* of the misstatements which accounted for between 8 and 17.7% of net income. *See Ganino,* 228 F.3d at 166. As noted *supra*, the government does not allege that Brixmor disguised a loss or changed a loss into income here. *See* Indictment ¶ 33 (identifying a difference between reported and alleged actual SSNOI growth of between 0-1.3%). Here, even assuming the accuracy of the government's allegations, the *dollar amount* of the alleged misstatements in any one quarter from 0.0% to 1.3% of SSNOI and an even smaller percentage of net income. Clearly, neither *Ganino*'s quantitative nor qualitative factors exist here.

The government also quotes several other qualitative factors from SAB 99. Opp. at 16 (noting that SAB 99 looks to "whether the misstatement masks a change in earnings or other trends, whether the misstatement hides a failure to meet analysts' consensus expectations for the

enterprise, and whether the misstatement has the effect of increasing management's compensation.") (internal quotations omitted). These qualitative factors are similarly absent in this case. The government does not claim that any alleged misstatements affected Mr. Pappagallo's compensation, nor was there any "change in trends" to be masked, because Brixmor's SSNOI growth was positive in every relevant quarter, even with the government's adjustments.

Regarding "whether the misstatement hides a failure to meet analysts' consensus expectations for the enterprise," the government has acknowledged that Brixmor merely "provides guidance with respect to [its] anticipated *annual* SS-NOI Growth performance results." Indictment ¶ 16 (emphasis added). Brixmor never provided quarterly guidance, and analysts never published any expectations regarding *quarterly* SSNOI growth. Consequently, the government is left with the contrived theory that Brixmor misstated its *quarterly* SSNOI growth to fit within its *annual* guidance range, a theory with no support or logical basis. In any event, even with the government's adjustments, Brixmor came within 0.1% of its *annual* guidance.

Accordingly, as with its quantitative deficiency, the Indictment does not meet the requisite materiality standards under any of the qualitative factors listed in SAB 99.

**II.    THE MOTION FOR A BILL OF PARTICULARS SHOULD BE GRANTED BECAUSE THE GOVERNMENT HAS FAILED TO EXPLAIN THE BASES FOR ITS ADJUSTMENTS AND ITS ALLEGATION THAT THE ORIGINAL ACCOUNTING ENTRIES WERE FRAUDULENT**

Contrary to the government's position, the defense is *not* seeking to discover the government's trial strategy. Mr. Pappagallo is simply and rightfully requesting clarification concerning the accounting adjustments that the government maintains are fraudulent.

The government claims that its case is predicated upon an overall "accounting fraud scheme" to report false quarterly SSNOI in public filings. Opp. at 24. Yet it somehow claims it is not required to prove "any particular fraudulent conveyance of information, or any particular

8

fraudulent accounting entry" and the "question for the jury will be whether a scheme existed – carried out through any number of means—to falsely report SS-NOI Growth." Opp. at 36. But the government obviously cannot prove an "accounting fraud scheme" without proving fraudulent accounting. In light of its representation that it "does in fact allege that *all* of the adjustments reflected in the Work Papers and Summary Spreadsheet were made necessary as a result of the defendants' fraud," Opp. at 29 (emphasis added), a bill of particulars is essential for Mr. Pappagallo to understand the bases of the government's accounting adjustments and why the government believes Brixmor's original accounting was fraudulent.

### A. The Government Has Failed to Produce Any Documents or Explanations as to the Bases Underlying the Government's Adjustments

Mr. Pappagallo seeks "the accounting rationale underlying [the government's] determinations that certain accounting items should have been treated the way the government now contends instead of how Brixmor did." Pappagallo Bill of Particulars Moving Brief (Dkt. 50) ("Moving Br. BOP") at 9. In response, the government points to the Work Papers and the Indictment. But neither explains the bases for the government's adjustments to the Categories or the bases for alleging that the original Brixmor accounting in those Categories was supposedly fraudulent.

Where the items in dispute involve "complex issues of accounting as to which reasonable accountants could reach different conclusions," the need for not only a list of the government's adjustments, but also the bases underpinning those adjustments are paramount. *SEC v. Price Waterhouse*, 797 F. Supp. 1217, 1241 (S.D.N.Y. 1992) (finding no fraud or recklessness on the part of the defendant accountants where court heard diametrically opposing views from accounting experts as to the reasonableness of the judgments made by defendants); *see also United States v. Nachamie*, 91 F. Supp. 2d 565, 571 (S.D.N.Y. 2000) (granting bill of particulars regarding

9

Medicare fraud charges where government "has not yet informed the defendants which of these claims were false *and in what way they were false*") (emphasis added).[5]

To rely on the Work Papers for clarification as the government suggests is futile. Two examples of the information in the Work Papers regarding the Categories prove instructive as to why. The government's mathematical adjustments to aggregated Purchase Orders, ("POs") and UC-tenant credits can be determined by analyzing and reverse engineering the numerical differences in the chart in paragraph 33 of the Indictment (the "Chart"). For the POs, the government seems to take the position that the aggregated POs should have been booked as income in the third quarter of 2013. Filor Decl. Exh. G. Regarding the UC-tenant credits, the government's accounting adjustments appear to have removed them from Brixmor's third and fourth quarters of 2013. Filor Decl. Exh. H. Yet, the Indictment does not even reference these adjustments and the Work Papers do not include any explanation why the government's adjustments to the POs or the UC-tenant credits are correct or why Brixmor's original accounting was incorrect.

The government attempts to show it provided sufficient information regarding the accounting adjustments to POs by pointing to specific spreadsheet rows in the Work Papers, including formulas contained in certain spreadsheet cells. Opp. at 30-31. This information purportedly explains the Government's adjustments to the POs. Opp. at 30-31. It does not. This

---

[5] A memorandum Mr. Pappagallo received from Brixmor in response to his Rule 17(c) subpoena provides some clarity as to the basis of the adjustment to only two of the Categories, CAM and RET. *See* Kehoe Decl. Exh. B. Critically, it appears these adjustments were made not because the underlying Brixmor accounting was fraudulent, but rather because the external auditor utilized a more conservative accounting methodology. *See id*. That explanation undercuts any suggestion that the government's adjustments to CAM and RET were required or the original accounting for them was fraudulent. Other than this one document, Mr. Pappagallo has been provided with no information explaining the bases of any adjustments to the other Categories.

10

information only identifies the numerical amount of the adjustment, *not the bases for the adjustment*.

Without the particulars requested, Mr. Pappagallo is left to guess as to the reasons for the government's adjustments. *See United States v. Savin*, No. 00 Cr. 45 (RWS), 2001 U.S. Dist. LEXIS 2445, at *10-11 (S.D.N.Y. Mar. 7, 2001) (ordering government to provide bill of particulars where production of over 100,000 pages of material did not meet the government's obligation to provide notice of the means and methods of alleged conspiracy). The bases for the adjustments in the Categories are essential to prepare a defense and avoid surprise at trial, and thus, a bill of particulars providing such is required. *See United States v. Vaid*, 16 Cr. 763 (LGS), 2017 U.S. Dist. LEXIS 143495, at *32 (S.D.N.Y. Sept. 5, 2017) (requiring a bill of particulars because "[g]iving Defendants data and documents for over 500,000 claims but not specifying which ones it will seek to prove at trial were fraudulent does not enable Defendants to prepare for trial or prevent surprise."); *United States v. Bin Laden*, 92 F. Supp. 2d 225, 233-34 (S.D.N.Y. 2000) ("in deciding whether a bill of particulars is needed, the court must determine whether the information sought has been provided elsewhere, such as in other items provided by discovery, responses made to requests for particulars, prior proceedings, and the indictment itself." (citing *United States v. Strawberry*, 892 F. Supp. 519, 526 (S.D.N.Y. 1995)).

Because the Work Papers do not indicate the bases for the government's adjustments or why the original accounting was fraudulent, the government's arguments that (a) the discovery materials plus the Indictment provide sufficient information, (Opp. at 20-21), and (b) voluminous discovery combined with "guidance about what is most relevant" obviates the need for a bill of particulars, (Opp. at 22), fall flat. No "guidance" can direct Mr. Pappagallo to something that does not exist. Despite the government's attempts to distinguish Mr. Pappagallo's informative case

11

citations, *Bortnovky*, *Connolly*, and *Nachamie* all clearly support Mr. Pappagallo's motion for a bill of particulars. *See United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987) (vacating convictions based on trial court's denial of motion for bill of particulars because without the bill of particulars, the "relevance of key events was shrouded in mystery at the commencement of and throughout the trial," and thus the appellants were "hindered in preparing their defense" and their convictions needed to be vacated); *US v. Connolly*, S1 16-cr-00370 (CM), 2017 U.S. Dist. LEXIS 82156, at *15-17 (S.D.N.Y. May 24, 2017) (finding bill of particulars was required where the government took the position, like the government did here, that possibly all of the information provided (here, all of the hundreds of thousands of line items in the Work Papers) could be relevant at trial and stating that even if a 1,000 line spreadsheet was the finite universe of trades at issue in the case, the government needed to provide the defendants with additional information to sufficiently enable them to mount a defense); *Nachamie*, 91 F. Supp. 2d at 574 (granting defendant's motion for bill of particulars regarding claims the government intends to prove at trial which "identify each and every one of the 'false and misleading' claims which were allegedly submitted and/or filed as part of the conspiracy," along with further specifics for each claim).

Lastly, the government cannot escape its failure to identify the bases for its adjustments to the Categories by characterizing this case as a "long running fraud scheme" that "accumulate[d] to create the false numbers." Opp. at 35, 36. The government's citations to *Block* and *Tuzman* are inapposite. Opp. at 36. In *Block*, the government was not alleging a scheme that "accumulated" to create false numbers, but instead that the defendant acted in only *one quarter*, to fabricate a figure and thereby "falsely inflate AFFO and AFFO per share in in [sic] ARCP's public filings," and the indictment "describes with specificity the acts [the defendant] allegedly committed." *United States v. Block*, 16-CR-595 (JPO), 2017 U.S. Dist. LEXIS 65169, at *2-3 (S.D.N.Y. April

28, 2017). In *Tuzman*, the court denied the motion for a bill of particulars where the defendant had already known for two months what exhibits the government planned to use at trial. *See United States v. Tuzman*, 301 F. Supp. 3d 430, 452 (S.D.N.Y. 2017) (emphasis added). As opposed to *Tuzman*, here, Mr. Pappagallo has hundreds of thousands of pages of discovery, not a discrete subset which he knows the government is planning on using, none of which explains the bases for the government's adjustments.

**B. The Government's Opposition Broadly Misstates Mr. Pappagallo's Request for the Rationale Behind the Adjustments to the Categories**

The government's attempt to convert a request for information into a purported disclosure of "the manner in which [the government] will attempt to prove the charges, the precise manner in which the defendant committed the crime charged, or a preview of the Government's evidence or legal theories," completely mischaracterizes Mr. Pappagallo's request. Opp. at 23, 24. Quite simply, Mr. Pappagallo is not asking for a preview of the government's case, but only to be reasonably appraised of the bases for the government's belief that its adjustments were necessary and why the original accounting was fraudulent.[6]

In juxtaposition with its claim that "all of the adjustments reflected in the Work Papers" were made due to the alleged fraud, (Opp. at 29), the government also makes the seemingly incompatible argument that "[t]he Government is not required here…to prove any particular fraudulent conveyance of information, or any particular fraudulent accounting entry." Opp. at 36.

---

[6] Indeed, the government's own citations do not support its strained argument because the defendants in those cases, in contrast to here, were already provided with the information sought in the motions for bills of particulars, (*see United States v. Bonventre*, 646 F. App'x 73, 78-79 (2d Cir. 2016); *United States v. Gall*, No. 3:95cr98 (AHN), 1996 U.S. Dist. LEXIS 23133, at * 20-21 (D. Conn. Aug. 12, 1996); *United States v. Leonelli*, 428 F. Supp. 880, 882-83 (S.D.N.Y. 1977)), whereas Mr. Pappagallo has been given no indication of the bases for the government's adjustments to the Categories.

13

The government would like to have it both ways. These incompatible pronouncements from the government exemplify its refusal to provide Mr. Pappagallo with a clear picture of the allegations against him. A bill of particulars is needed to allow Mr. Pappagallo to understand the bases of the government's adjustments and to mount a meaningful defense at trial.

## CONCLUSION

For the foregoing reasons, Mr. Pappagallo's motion to dismiss the indictment should be granted in full. In the alternative, Mr. Pappagallo's motion for a bill of particulars should be granted.

Dated: New York, New York
February 7, 2020

GREENBERG TRAURIG, LLP

By: */s/ Gregory W. Kehoe*

Gregory W. Kehoe
Daniel P. Filor
Robert A. Horowitz
GREENBERG TRAURIG LLP
200 Park Avenue
New York, NY 10116
(212) 801-9200
*Counsel for Michael V. Pappagallo*