USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

**WILMERHALE**

May 20, 2021

**VIA ECF**

Peter G. Neiman

+1 212 205 6487 (t)
+1 212 230 8888 (f)
peter.neiman@wilmerhale.com

The Honorable Colleen McMahon
United States District Court
  for the Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *United States v. Michael Carroll, et al.*, No. 19-cr-545 (CM)

Dear Chief Judge McMahon:

**MEMO ENDORSED**

On behalf of Michael Carroll, we respectfully request that the Court exercise its discretion to expunge the record of Mr. Carroll's arrest. This Court has ancillary jurisdiction to order expungement following dismissal of an indictment, *see Doe v. United States* 833 F.3d 192, 197 (2d Cir. 2016), if it finds that Mr. Carroll's privacy rights outweigh any law enforcement interest in maintaining the record of his arrest, *see, e.g., United States v. Doe*, 935 F. Supp. 478, 480 (S.D.N.Y. 1996). That is the case here. Mr. Carroll is suffering concrete adverse consequences of his arrest, and there is no material law enforcement interest in maintaining his arrest records.

We have shared a draft of this letter with the government in advance of filing, and the government has authorized us to advise you that it takes no position on the request.

*1.   Factual Background*

Mr. Carroll was the CEO of Brixmor, a real estate investment trust ("REIT"). The Indictment charged Mr. Carroll and others with securities fraud for allegedly "smoothing" a non-GAAP metric, same property net operating income ("SP-NOI") growth. The Indictment alleged three ways this was accomplished: (1) by storing income in a deferred income account for later use, (2) by including certain portions of lease settlement income (payments made by a tenant to be let out of a lease early) in SP-NOI without disclosing the inclusion, and (3) by making certain adjustments to prior-period results to increase current period SP-NOI growth.

Post-indictment, the defense discovered and presented to the government substantial evidence that the defense contended demonstrated Mr. Carroll's innocence. That evidence addressed all three theories of the Indictment:

- *The Deferred Income Account*: Nearly all of the discrepancy between Brixmor's reported SP-NOI and what the Indictment alleged was the "actual" SP-NOI was due to a $2 million income item in the deferred income account that allegedly should have been recognized in Q3 2013 but was instead largely recognized in Q4 2013. The defense presented contemporaneous documents showing that the decision to recognize this

Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center, 250 Greenwich Street, New York, New York 10007
Beijing   Berlin   Boston   Brussels   Denver   Frankfurt   London   Los Angeles   New York   Palo Alto   Washington

---

Handwritten memo endorsement (Judge McMahon):

5/24/2021 — For substantially the reasons articulated in Mr. Neiman's letter, the motion is granted and Mr. Carroll's arrest record is expunged. The Court is confident that Mr. Carroll's privacy interests outweigh any law enforcement interest in maintaining this arrest. It is unfortunate that the government's pre-arrest investigation was not sufficiently thorough, so that the government learned of evidence that it could not prove him guilty of any crime. Colleen McMahon USDJ

WILMERHALE

May 20, 2021
Page 2

> income in Q4 2013 was part of a legitimate process to address old, offsetting balances in the deferred-income account, including a $1.85 million aged expense item that essentially cancelled out the $2 million aged income item. When questioned about this new evidence, cooperating witness Steven Splain, Brixmor's former Chief Accounting Officer, confirmed that the two aged items were "discovered in the same quarter" and therefore it was proper to "book them in the same quarter and let them largely cancel out." He also confirmed that the decision to book both items in the fourth quarter of 2013 (rather than the third quarter, when he learned of them), was not "focused on S[P] NOI," but was instead to allow further time to research both items, which he thought was needed because he "just wanted to get it right." In short, the single largest allegedly fraudulent adjustment in this case was simply part of a legitimate correction of old errors.

- *Lease Settlement Income*: The Indictment alleged that the inclusion of an amortized portion of lease settlement income in SP-NOI was not disclosed. The defense presented documents demonstrating that every analyst who covered Brixmor received a written report (which a Brixmor witness recalled would have been prepared by staff working with Mr. Carroll) that prominently identified an "SS LSI Amort Adjustment" included in SP-NOI. *E.g.*, Ex. A (WB00272863) at 2. The defense also presented evidence reflecting that every quarter the auditors were provided with documents showing the inclusion of this amortized amount in SP-NOI. The auditors opined this was "appropriate[]." *See* Ex. B (Excerpt of EY-BRIX-EWP-000281 at tab "A03.1 – Same property NOI").

- *Prior-Period Adjustments*: The defense also presented documents that showed that all three allegedly fraudulent prior-period adjustments were disclosed and highlighted for auditors, who expressed no concerns. *See, e.g.*, Ex. C (Excerpt of WB00743733 at tab "Same Prop"). The government's expert agreed that such adjustments may be appropriate to, for example, correct prior period errors, and that of the roughly $606,000 in allegedly fraudulent prior period adjustments, $550,000 were required. *See* Ex. D (Excerpt of WB00452584 at tab "NOI Adjustments Summary_All").

After the defense presented this evidence, the government "conducted extensive additional investigation, including discussions with cooperating witnesses, Brixmor employees, and forensic accountants." ECF No. 91. Following this investigation, the government concluded that it could "not prove beyond a reasonable doubt that the . . . deferral of a category of accounting items . . . from the third quarter of 2013 to the fourth quarter of 2013, was part of a scheme to defraud." *Id.* The government further determined that it could not "establish quantitative materiality beyond a reasonable doubt" which "goes to an essential element of the charged offense" and that it was not "in the interest of justice to continue this prosecution." The government therefore sought leave of the Court to dismiss the Indictment. *Id.* The government also moved to dismiss charges against two cooperating witnesses who had already pled guilty. *Id.*

WILMERHALE

May 20, 2021
Page 3

2. *Legal Standards*

Under Second Circuit law, the decision to grant a motion for expungement "lies within the equitable discretion of the court." *United States v. Schnitzer*, 567 F.2d 536, 539 (2d Cir. 1977). In considering such a motion, the court should consider that "an arrest record alone can create serious adverse consequences for those who have been arrested in the past, notwithstanding the ultimate disposition of the case," and assess the motion "individually on its merits to determine the proper balancing of the equities." *Id.* at 539-540. While expungement is reserved for extraordinary cases, courts in this Circuit have not hesitated to grant expungement where appropriate. *See, e.g., United States v. Doe*, 935 F. Supp. 478, 480 (S.D.N.Y. 1996); *United States v. Sahadeo*, No. 94-CR-3 (TPG), 2011 WL 5828339, at *2 (S.D.N.Y. Nov. 17, 2011) (granting request to expunge request record where cased "ended ... with a *nolle prosequi*"); *United States v. Doe*, No. 71-CR-892 (CBM), 2004 WL 1124687, at *1 (S.D.N.Y. May 20, 2004).

3. *Expungement Is Appropriate*

Expungement is appropriate here.

*First*, as the government recognized in asking this Court to enter an order *nolle prosequi*, the facts simply did not warrant pursuing criminal charges against Mr. Carroll. That supports expungement because "[t]here is no legitimate public interest in maintaining a record" in these circumstances, since it "contains no information . . . likely to be useful in the future." *United States v. Van Wagner*, 746 F. Supp. 619, 622 (E.D. Va. 1990) (granting expungement following *nolle*).

*Second*, the government was unaware of a portion of the evidence cited above when it decided to seek the Indictment in this case. It decided to move to dismiss the Indictment after the evidence was presented and after "extensive additional investigation." ECF No. 91. Mr. Carroll should not be saddled for life with an arrest record simply because that "extensive additional investigation" occurred after Indictment. *See Van Wagner,* 746 F. Supp. at 621 (expungement appropriately "remedies a . . . mistake" where government developed exculpatory evidence post-arrest).

*Third*, Mr. Carroll has already suffered, and will continue to suffer, unwarranted "adverse consequences" from his arrest. Over twenty years, Mr. Carroll worked his way up from an entry level leasing position in Toledo, Ohio at a predecessor company to become CEO of Brixmor, building an unblemished reputation for integrity along the way. He lost his job at Brixmor after the audit committee's flawed five-week investigation, which failed to uncover the key exculpatory evidence highlighted above. Because of the high regard in which he was held in the industry, Mr. Carroll was then hired as CEO of another REIT, a position he lost as a result of his arrest in this case. And his arrest record will plague any future job search in real estate. Real

WILMERHALE

May 20, 2021
Page 4

estate companies, both public and private, routinely borrow money; as part of their due diligence banks routinely inquire about whether company leadership has ever been arrested. A "yes" answer to that question will routinely bar access to financing. Mr. Carroll's "arrest record alone" is thus creating "serious adverse consequences"—effectively barring him from the only industry he has ever worked in—"notwithstanding the ultimate disposition of the case." *Schnitzer*, 567 F.2d at 539-40. These severe adverse consequences support expungement. *See Van Wagner*, 746 F. Supp. at 621 (expungement appropriate where arrest deprived innocent defendant of ability to "secure bank loans and city government contracts").

As the government ultimately determined, this prosecution was "not in the interest of justice." Mr. Carroll should not continue to carry the brand placed on him by the mistaken decision to arrest him.

Respectfully submitted,


/s/ Peter G. Neiman
PETER G. NEIMAN
ANJAN SAHNI
MICHELLE NICOLE DIAMOND
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

WILLIAM R. MCLUCAS
BRENDA E. LEE
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000

VICTOR L. HOU
CLEARY GOTTLIEB STEEN
   & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
(202) 225-2000

*Counsel for Michael Carroll*